**CASE NO. 17-cv-414-JHP-JFJ**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**TRACY SHAW,**

**Plaintiff,**

v.

**THE STATE OF OKLAHOMA,** *ex rel.,* **OKLAHOMA TOURISM AND RECREATION DEPARTMENT,**

**Defendant.**

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

**RICHARD N. MANN, OBA#11040**
**LEXIE P. NORWOOD, OBA#31414**
**Assistant Attorney General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorney for Defendant*

**June 11, 2018**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ......................................................................... iii

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ................................... 1

STATEMENT OF THE CASE ...................................................................... 1

STATEMENT OF UNDIPUSTED FACTS ..................................................... 4

STANDARD OF REVIEW .......................................................................... 8

ARGUMENT AND AUTHORITY ................................................................ 9

PROPOSITION I:

    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.. 9

PROPOSITION II:

    SHAW WAS A PROBATIONARY EMPLOYEE ......................................... 11

PROPOSITION III:

    PLAINTIFF CANNOT PREVAIL ON A REHABILITATION CLAIM
    AGAINST OTRD ........................................................................... 14

CERTIFICATE OF SERVICE ................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Albertson's Inc. v. Kirkingburg,*
527 U.S. 555 (1999) .................................................................................................. 14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................... 8

*Atl. Richfield Co. v. Farm Credit Bank of Wichita,*
226 F.3d 1138 (10th Cir. 2000) ................................................................................. 9

*Beus v. Uinta County Bd. of County Com'rs,*
143 F.App'x 945 (10th Cir. 2005) ............................................................................ 12

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .................................................................................................... 8

*Cummings v. Norton,*
393 F.3d 1186 (10th Cir. 2005) ............................................................................... 14

*E.E.O.C. v. Horizon / CMS Healthcare Corp.,*
220 F.3d 1184 (10th Cir. 2000) ................................................................................. 8

*Hennagir v. Utah Dep't of Corrections,*
587 F.3d 1255 (10th Cir. 2009) ......................................................................... 14, 15

*Hensley v. Capital Billing, LLC,*
2014 WL 223461 (W.D. Okla. Jan. 21, 2014) ......................................................... 10

*Jarvis v. Potter,*
500 F.3d 113 (10th Cir. 2007) ................................................................................. 14

*Jones v. U.P.S., Inc.,*
502 F.3d 1176 (10th Cir. 2007) ............................................................................... 10

*Lobato v. New Mexico Environmental Depart.,*
733 F.3d 1283 (10th Cir. 2013) .............................................................. 13, 15, 16, 17

*Martinez v. Potter,*
347 F.3d 1208 (10th Cir. 2003) ................................................................................. 9

*May v. Cockman,*
2016 WL 10591979 (10th Cir. Jan. 28, 2016) ...................................................... 17, 18

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973)................................................................................. 13, 15, 16, 17

*McNeel v. Public Service Co.,*
117 F.3d 1428, 1997 WL 388855 (10th Cir. July 11, 1997)...................................... 14

*Mitchell v. City and Cnty. of Denver,*
112 F.App'x 662 (10th Cir. 2004) .................................................................................. 9

*Piercy v. Maketa,*
480 F.3d 1192 (10th Cir. 2007).................................................................................... 9

*Protctor v. United Parcel Serv.,*
502 F.3d 1200 (10th Cir. 2007).................................................................................. 16

*Richardson v. City of Albuquerque,*
857 F.2d 727 (10th Cir. 1988)..................................................................................... 12

*Robles v. Amarr Garage Doors,*
2012 U.S. Dist. LEXIS 85106 (D. Kan. June 20, 2012) ............................................ 10

*Shaw v. United States,*
622 F.2d 520 (Ct. Cl. 1980) ........................................................................................ 18

*Smith v. Midland Brake, Inc.,*
180 F.3d 1154 (10th Cir. 1999).................................................................................. 15

*Timmerman v. U.S. Bank, N.A.,*
483 F.3d 1106 (10th Cir. 2007).................................................................................. 16

*Trujillo v. PacifiCorp,*
524 F.3d 1149 (10th Cir. 2008).................................................................................. 16

*White v. York Int'l, Corp.,*
45 F.3d 357 (10th Cir. 1995)...................................................................................... 14

*Williams v. Widnall,*
79 F.3d 1003 (10th Cir. 1996).................................................................................... 14

## STATUTES

Okla. Stat. tit. 74:840-4.13(D) ................................................................................. 12

29 U.S.C. § 794 ....................................................................................................... 4, 9

42 U.S.C. § 1201 ......................................................................................................... 4

## RULES

LCvR 56 ......................................................................................................................... 1

Fed. R. Civ. P. 56(a) ............................................................................................... 1, 8

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

(1) TRACY SHAW,

        Plaintiff,

v.

(1) THE STATE OF OKLAHOMA, *ex rel.,* OKLAHOMA TOURISM AND RECREATION DEPARTMENT,

    Defendant.

**Case No.: 17-cv-414-JHP-JFJ**

## DEFENDANT OKLAHOMA TOURISM AND RECREATION DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant, State of Oklahoma, *ex rel.,* Oklahoma Tourism and Recreation Department ("OTRD"), pursuant to Fed. R. Civ. P. 56(a) and LCvR 56, moves this Court for summary judgment in its favor, showing the Court as follows:

### STATEMENT OF CASE

Plaintiff Tracy Shaw ("Shaw" or "Plaintiff") was employed as an armed Park Ranger with OTRD in its Division of State Parks at Cherokee. Shaw was hired on April 15, 2015, in a probationary status for a one (1) year period of time. He was terminated and released from his position approximately eleven (11) months later on March 14, 2016, prior to the completion of his probationary status.

Prior to his employment, Shaw had been in local law enforcement following a military career in the navy. As a result of his military service, Shaw had been diagnosed with post-traumatic stress disorder ("PTSD") disability and such was

disclosed to OTRD during his application process. Shaw believes that his disability was the reason for his discharge and that it was discriminatory.

On November 17, 2015, during Shaw's probationary employment status, and without any authorization from his supervisor, Chad McCall, he decided, of his own accord, to hang his own personal surveillance trail camera in a remote area of a state park known as Little Blue. Shaw did this without any ladder or other safety equipment and without the assistance of any other employee of OTRD. Although, Shaw claims that he advised a maintenance employee, not his supervisor, what he was going to do, he did not request any assistance or indicate when he would return.

Upon arriving at the remote location alone, Shaw picked a tree, on the edge of a creek bank, and proceeded to climb from the top of his truck bed unto the tree and hang his camera approximately fifteen (15) feet from the ground. When Shaw attempted to climb back from the tree into the truck he realized that the angle was bad and too far for him to jump. As a result, Shaw decided to jump from a height of approximately six (6) to eight (8) feet, by his own estimation, to the uneven ground along the creek bank, and suffered a severe injury to his left leg/knee and rolled down the hill into the creek bed. Shaw, who had neglected to take his personal cell phone with him into the tree, was left without any means to summon help and had to crawl back up the creek bank and hoist himself into his truck to request assistance.

Shaw received extensive medical treatment for his injuries including surgeries to his leg and rehabilitation. The State of Oklahoma paid for his medical bills through the worker's compensation system and such is not an issue in this case.

Shaw bases his discrimination theory on the actions of an entirely different state agency than the one Plaintiff named in this action.  As a law enforcement, Park Ranger employee, Shaw was required to be allowed entry into the Oklahoma Law Enforcement Retirement System ("OLERS"). Shaw was initially deemed to be physically qualified by OLERS' doctor on or about April 2, 2015. However, once the OLERS' doctor had an opportunity to review Shaw's VA disability explanation he rejected him as physically qualified on or about May 15, 2015.

Tourism Deputy Director Claudia Conner ("Conner") continually fought with OLERS about this contradiction as did Plaintiff who sought an appeal of that determination, *with OLERS,* for the next several months. The argument with OLERS by both Conner and Plaintiff ultimately proved fruitless, and the decision by OLERS was the basis of Plaintiff's Equal Employment Opportunity Commission ("EEOC") claim *against OLERS*.

Apparently, Plaintiff, who refers to OLERS and Tourism in his complaint, as apparently interchangeable, never named OLERS as a defendant in this case although that is the entity he sought an administrative appeal with and named in his EEOC complaint.

OTRD released Shaw from his probationary employment status due to his remarkably bad judgment on November 17, 2015, wherein he failed to seek and obtain authorization, assistance, use a ladder, and ultimately chose to proceed to climb and fall/jump out of a tree in a remote section of state park, which had already been closed for the winter. Neither Conner nor anyone at OTRD has any control over

the decisions made by OLERS and was not successful in changing its determination on Shaw's fitness. Ultimately, Shaw was released from his probationary, at will employment status for the failure to exercise good judgment, which resulted in the injuries described above.

Plaintiff's sole cause of action remaining is for alleged violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 794. (*See*: [Doc. 9, ¶ 7]. Plaintiff dropped his other claim for violation of the Americans' with Disabilities Act, 42 U.S.C. § 1201 via that Amended Complaint following Defendant's Motion to Dismiss. [Doc. 8]. There are no pendent state claims.

## STATEMENT OF UNDISPUTED FACTS

1.     Plaintiff began his employment with OTRD on April 27, 2015, as a probationary, at will employee. (*Final Offer of Employment from Chad McCall, dated April 5, 2015,* ¶¶ 4-5 (un-numbered)*, attached as Exhibit 1*).

2.     The McCall letter expressly references the applicable Oklahoma Merit Rule (530:10-11-30) and that Shaw will be a probationary employee for one (1) year. (Ex. 1, ¶ 4).

3.     Plaintiff acknowledges and does not dispute that he was a probationary, at-will-employee for one (1) year. (*Deposition of Tracy Shaw,* at p. 55, ln. 7 – p. 56, ln. 2; p. 69, ln. 15 – p. 70, ln. 3, 12 – p. 71, ln. 8, attached as Exhibit 2).

4.     Plaintiff's employment with OTRD ended on March 14, 2016, when the OTRD released him from his probationary status as a Park Ranger. (*Correspondence*

*from Dick Dutton, Executive Director to Plaintiff, dated March 11, 2016,* attached as Exhibit 3; *see also* Ex. 2, p. 56, ln. 12 – p. 57, ln. 15).

5.      Shaw was initially determined to be physically qualified by the OLERS' examining physician, Bill Edwards, D.O. (*Correspondence from Bill Edwards, D.O. dated April 2, 2015 to OLERS,* attached as Exhibit 4).

6.      On May 14, 2015, Bill Edwards, D.O. changed is assessment of Shaw upon reviewing his Veteran's Affairs PTSD assessment. Dr. Edwards determined that Shaw was not physically qualified based upon that review. (*Correspondence from Bill Edwards, D.O. dated May 14, 2015 to OLERS,* attached as Exhibit 5).

7.      Shaw had personally provided the VA assessment to OLERS upon their request. (Ex. 2 at p. 111, ln. 20 – 113, ln. 25).

8.      By May 21, 2015 Shaw was notified by Ginger Poplin, Director of OLERS, that reviewing physician's decision was the basis for their denial of his entry into OLERS. (*Correspondence from Ginger Poplin dated May 21, 2015 to Plaintiff,* attached as Exhibit 6).

9.      Shaw's OLERS membership was rejected a second time on July 14, 2015. Whereupon, OLERS reiterated that Shaw's membership was rejected based on "the findings of our reviewing physician, Dr. Edward." (*Correspondence from Amy Martinez dated July 14, 2015 to Plaintiff,* attached as Exhibit 7).

10.     In a Memo to the OLERS' "Board of Trustees," Shaw requested a hearing to review the May 14, 2015 decision of Dr. Edwards. (*Memo from Plaintiff to Board of Trustees, OLERS, dated July 22, 2015,* attached as Exhibit 8).

11.     Shaw's request for a hearing was denied by OLERS' Executive director, Ginger Poplin. (*Correspondence from Ginger Poplin dated Aug. 21, 2015 to Plaintiff,* attached as Exhibit 9).

12.     After his termination from OTRD on March 14, 2016, Shaw filed his initial complaint with EEOC alleging that he had been discriminated against by the State of Oklahoma, and the organization of contact of the State was OLERS. (*Plaintiff's EEOC Intake Questionnaire with Addendum,* attached as Exhibit 10).

13.     Plaintiff sought to "amend" his EEOC charge of discrimination on June 20, 2016, but still identified the organization charged with discrimination as OLERS. (*Plaintiff's EEOC Charge of Discrimination,* attached as Exhibit 11).

14.     The "Notice of Charge of Discrimination" for Plaintiff's claim was issued to "Ms. Ginger Poplin, Executive Director, Oklahoma Law Enforcement Retirement System." (*Notice of Charge of Discrimination,* attached as Exhibit 12).

15.     OTRD never received a notice of charge of discrimination from the EEOC against it prior to the instant action being filed. (*Statement of Claudia Conner,* attached as Exhibit 13).

16.     On November 17, 2015, Plaintiff attempted to place his own personal "Stealthcam" trail cam in a treat at Little Blue State Park. (*Statement of Tracy Shaw,* attached as Exhibit 14). Plaintiff does not indicate in his statement the use of a ladder, or any other safety equipment for that matter. (Ex. 2, p. 89, ln. 11 – p. 91, ln. 5; p. 95, ln. 15 – p. 96, ln. 18).

17.    Shaw attempted to install his personal trail cam by himself and did not use a ladder. *Id.*

18.    Shaw backed his truck up to the tree to step into a "V" notch six (6) feet off the ground. *Id.*

19.    As soon as Shaw stepped from his truck bed and bed rail, he realized the truck was not close enough and had to jump from the rail to the tree. *Id.*

20.    After placing the camera in the tree, and realizing the truck was too far away, and that it had been raining, Shaw believed the truck rail and bed were wet and slick and he would be injured if he jumped to his truck. *Id.*

21.    Shaw made the decision to jump from the tree unto the ground, at the creek bank, and sustained a severe injury to his left leg. Shaw further "tumbled" down the embankment into the creek bed. *Id.*

22.    Because Shaw did not request assistance for his endeavor, he had to crawl up the embankment to retrieve his cell phone to call his supervisor, Chad McCall. *Id.*

23.    Shaw was aware that it had been raining prior to going to Little Blue to hang the camera. (Ex. 2 at p. 78, ln. 7-15; p. 90, ln. 12-18).

24.    Chad McCall, who was the Park Manager, and Shaw's supervisor, at the time of the incident, states that the hanging of the camera by Shaw was unauthorized. (*Affidavit of Chad McCall,* attached as Exhibit 15).

25.    McCall also states that Park had multiple ladders available and ready for use by Park Rangers. *Id.*

26.     If Shaw had sought approval and had the camera been authorized, McCall would have provided assistance by other individuals and a ladder to avoid the injuries sustained by Shaw. (*Id.; see also* Ex. 2, p. 87, ln. 1-5; p. 88, ln. 13-25).

27.     After reviewing Shaw's statement and that of McCall, Conner recommended that Shaw's probationary employment status be terminated due to his "complete lack of judgment" in the tree incident. (Ex. 13, ¶¶ 8 and 9).

## STANDARD OF REVIEW

Summary judgment shall be granted when the moving party demonstrates that it is entitled to judgment as a matter of law because there is no evidence – considering the pleadings, depositions, answers to interrogatories, along with affidavits – to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine issue of material fact exists. *Horizon/CMS Healthcare Corp.*, 220 F. 3d 1190. The court must "'view the evidence and draw all reasonable

inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Although Plaintiff is entitled to all reasonable inferences from the record, he must still marshal sufficient evidence requiring submission of the matter to the jury in order to avoid summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the Plaintiff bears the burden of persuasion on a claim at trial, then summary judgment may be warranted if (a) Defendants point out a lack of evidence to support an essential element of that claim, and (b) Plaintiff cannot identify specific facts that would create a genuine issue. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013).

## ARGUMENT AND AUTHORITY

### PROPOSITION I: PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiff's cause of action is for alleged violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 794. Before instituting a judicial action under the Rehabilitation Act of 1973, a complainant must first exhaust administrative remedies by filing a Charge of Discrimination with the EEOC. The exhaustion requirement "serves to put an employer on notice of a violation prior to the commencement of judicial proceedings. This in turn serves to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation." *Mitchell v. City and Cnty. of Denver*, 112 F.App'x 662, 666 (10th Cir. 2004)(quoting *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003)). In the Tenth Circuit, the exhaustion requirement

is a jurisdictional prerequisite to suit. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

Plaintiff's claim is "generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* at 1186 (citations and quotation omitted). Plaintiff's Notice of Charge of Discrimination is directed only toward OLERS, not the Defendant in this action, thereby giving OLERS only notice of his alleged claim. (*See* Ex. 11). Unless a party is a named party in the charge of discrimination, the court generally does not have subject matter jurisdiction over the claim against the unnamed party. *See Robles v. Amarr Garage Doors*, 2012 U.S. Dist. LEXIS 85106 * (D. Kan. June 20, 2012). Here, Plaintiff failed to exhaust his administrative remedies against Defendant because the Charge of Discrimination names only OLERS. *See Hensley v. Capital Billing, LLC*, No. CIV-13-790-D, 2014 WL 223461, at *1 (W.D. Okla. Jan. 21, 2014)(" Plaintiff's did not name Defendant Auxiliary in her Charge of Discrimination, Plaintiff's ADA claim against Defendant Auxiliary must be dismissed for lack of subject matter jurisdiction."). Defendant never received any Notice from the EEOC or a copy of the Charge of Discrimination against OLERS from the EEOC. (*See* Ex. 13). Therefore, Defendant was never given notice or have a chance to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation.

By not properly exhausting his claim, Plaintiff did not give Defendant notice of any alleged violation prior to the commencement of this civil action. As such,

Plaintiff's failure to properly pursue and exhaust administrative remedies by filing an EEOC charge, thereby properly giving Defendant notice before filing suit, is fatal. It is clear Plaintiff's EEOC charge cannot show exhaustion with respect to Defendant in this suit. Therefore, Defendant is entitled to summary judgment on Plaintiff's claims for failure to exhaust administrative remedies and therefore lack of subject matter jurisdiction.

**PROPOSITION II:       SHAW WAS A PROBATIONARY EMPLOYEE**

It is clear and not subject to dispute that Plaintiff was a probationary employee the entire time he was OTRD. (April 27, 2015 – March 14, 2016). As such, Plaintiff could be terminated and released from employment for any rational non-discriminatory reason. As was identified in Plaintiff's letter of hire (Ex. 1), and his letter of release (Ex. 2), respectively, Shaw was advised of this and he understood what it meant.

Merit Rule 530:10-11-30 provides:

a.  Merit Rule 530:10-11-30

    i.     Quick explanation: Anyone appointed to a "classified position" is subject to a one-year probationary period of employment. This rule states that principle.

    ii.    Text: 530:10-11-30. Probationary employees; general provisions (a) <u>All original appointments to classified positions</u> shall be made from certificates, except as provided elsewhere in the Merit Rules or by statute, for a <u>probationary period of 1 year</u>...

Merit Rule 530:10-11-32 provides:

    i.     Explanation: Employer can terminate the appointment of a probationary employee at any time "during the probationary period" without the right of appeal.

     ii.    Text:
         530:10-11-32. Termination during probationary period
         *The probationary appointment of any person may be*
         *terminated at any time during the probationary period*
         *without right of appeal* [74:840-4.13(D)].

(Emphasis added). Both of these Rules are identified in Plaintiff's letter of hire dated

April 14, 2015. The letter of hire also advised Plaintiff of his "date of entry" on April

27, 2015 and that the last day of his probation period would be April 26, 2016. (Ex.

1).

     The Merit Rules are consistent with Oklahoma Statute, which states:

> Every person, except as provided in subsection E of this section, upon initial appointment under the classified service, **shall be appointed for a probationary period of one (1) year**, except that the appointing authority may waive in writing the remainder of the probationary period at any time after a probationary employee has served six (6)  months; provided, however, that the employee and the Director of the Office of Management and Enterprise Services shall be notified in writing as to such action and the reason therefor. **The probationary appointment of any person may be terminated at any time during the probationary period without right of appeal**...

Okla. Stat. tit. 74:840-4.13(D)(Emphasis added).

     The law in this circuit is well settled that a probationary employee has no

vested interest, i.e., a proprietary interest in continued employment, which would

provide a pre-termination hearing. *Richardson v. City of Albuquerque,* 857 F.2d 727

(10th Cir. 1988). There the court determined that a probationary employee under a

similar New Mexico law had no proprietary interest in continued employment. (*See*

*also*: *Beus v. Uinta County Bd. of County Com'rs,* 143 F.App'x 945 (10th Cir. 2005),

where a then current employee transferred to a new probationary position and was

terminated, with no vested rights in the probationary position established).

Similarly, Plaintiff's claim that he cannot be discharged, even as a probationary employee for a discriminating reason still fails where the employer has any rational basis for termination. (*See: Lobato v. New Mexico Environmental Depart.,* 733 F.3d 1283 (10th Cir. 2013)). In *Lobato,* a Hispanic probationary employee was subjected to racially inappropriate comments by his supervisor, among other things. *Lobato* was terminated shortly before the end of his probationary period. The court found that he failed to establish that the stated reason for his termination was pretextual.

In a rehabilitation action, essentially a plaintiff alleges that he had a disability and that the employer failed to accommodate because of discrimination against his disability. In this case, it is crystal clear that Plaintiff did not request an accommodation for his PSTD, it is still the basis for his discrimination claim against OLERS. Plaintiff continues to make a discrimination claim against OLERS, the basis for his claim against OTRD's termination of his probationary employment status. At most, Plaintiff has a circumstantial case of discrimination against OTRD. Plaintiff has not even named OLERS as a defendant in this action, although his EEOC claim was solely directed at OLERS.

Plaintiff lacks direct evidence of discrimination and therefore his alleged discrimination claim should be analyzed within the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973), which requires Plaintiff to first make a prima facie case of discrimination, after which the burden shifts to the Defendant to articulate a nondiscriminatory

reason for its conduct. The Plaintiff then must show that the Defendant's stated reason is merely pretextual. *Cummings v. Norton*, 393 F.3d 1186, 1189, fn. 1 (10th Cir. 2005) (citing *Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir. 1996)).

## PROPOSITION III:   PLAINTIFF   CANNOT   PREVAIL   ON   A REHABILITATION CLAIM AGAINST OTRD

"To make a prima facie case under the Rehabilitation Act, a plaintiff must establish three elements: (1) he was a disabled person under the statute, (2) he was otherwise qualified for the job regardless of the disability, and (3) [the employer took an adverse action on account of her disability]." *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005) (additional citations omitted); *McNeel v. Public Service Co.*, 117 F.3d 1428, 1997 WL 388855 at *1 (10th Cir. July 11, 1997) (unpublished); *see also White v. York Int'l, Corp.*, 45 F.3d 357, 360-62 (10th Cir. 1995). The standards for discrimination and retaliation claims under the Rehabilitation Act are the same as those for discrimination and retaliation claims under the ADA. *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1267 fn 5 (10th Cir. 2009) (*citing Jarvis v. Potter*, 500 F.3d 1113, 1121, 1125 (10th Cir. 2007)). Each of the elements is essential to the plaintiff's disability claim and if the plaintiff cannot satisfy the qualified individual prong, the remaining elements do not need to be addressed. *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1262 (10th Cir. 2009) (*citing Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162 (1999)). "[Plaintiff] bears the burden of showing that she is able to perform the essential functions of her job, with or without reasonable accommodation." *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1262 (10th Cir. 2009) (citations omitted). Furthermore, "[i]t is not reasonable

to require an employer to create a new job for the purpose of reassigning an employee to that job." *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1265, fn. 3 (10th Cir. 2009) (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999)(en banc)).

In *Lobato,* the Circuit there analyzed the claims of discrimination by the probationary status employee under *McDonnell-Douglas.* The court determined that notwithstanding *Lobato's* claim that he was fired because of his Hispanic and Mexican ancestry, his employer could rely in good faith on his co-worker and supervisor's reports that he was dishonest, failed to cooperate with management, and exhibited "…unprofessional attitude towards coworkers and the public."

In other words, even if *Lobato* could establish a *prima facie* case of discrimination, the employer's reason or termination as a probationary employee was not pretextual. *Lobato,* 733 F.3d at 1289. The court discussed all of *Lobato's* offered explanations of pretext and found them all to be insufficient; namely: (1) that he had no prior progressive discipline; (2) falsified resume; (3) expense report; (4) unprofessional behavior; and (5) temporal proximity. Two of the factors from *Lobato* are argued by Shaw as pretext. One of Plaintiff's complaints is that he had received no prior discipline before his termination on March 14, 2016. However, in *Lobato,* as here, the circuit specifically found that *Lobato's* status as a probationary employee excluded "progressive discipline," because there was no requirement for it for probationary employees. *Id.* at 1290. There is no evidence presented in the instant action that Shaw was entitled to "progressive discipline." In fact, and as in *Lobato*,

he was a probationary, at will employee who could be fired for any reason. *Id.* The court said, "...where 'progressive discipline [is] entirely discretionary' and the employer 'did not ignore any established company policy in its choice of action, the failure to implement progressive discipline is not evidence of pretext..." citing *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 119-20 (10th Cir. 2007).

Here, Shaw was a probationary, at will employee and was advised of this at his hiring. As in *Lobato*, OTRD had a legitimate, rational, and non-discriminatory reason to terminate his employment.

Shaw also complains that his termination was so close to the end of his probationary period, it suggests it was motivated by discrimination. i.e., that the offered reason for dismissal is pretextual. However, the *Lobato* court addressed this "temporal proximity" issue as well. First, the court provided that while "temporal proximity" might help establish a *prima facie* case, it does not establish pretext because the burdens are different.

> We recognize that "temporal proximity" between the protected opposition activity and an adverse employment action "can contribute to an inference of discrimination." *Trujillo v. PacifiCorp,* 524 F.3d 1149, 1157 (10th Cir.2008). But that is in the context of evaluating the plaintiff's prima facie case, which is not at issue here. The question here is whether temporal proximity alone also shows pretext.
>
> It does not. We have previously held that "temporal proximity is sufficient to establish a prima facie case, but *not* to establish pretext, because the evidentiary burden is different." *Proctor v. United Parcel Serv.,* 502 F.3d 1200, 1213 n. 6 (10th Cir.2007) (emphasis added). As we explained,
>
>> The burden of establishing a prima facie case in the *McDonnell Douglas* framework is not onerous. It is because of this relatively lax burden that we allow temporal proximity between a

> protected activity and an adverse action to establish a prima
> facie case; for the same reason, we have not imported this
> lessened standard to pretext analysis where the burden is more
> demanding and requires a plaintiff to assume the normal burden
> of any plaintiff to prove his or her case at trial. Allowing very
> close temporal proximity to operate as a proxy for this
> evidentiary requirement would not further the substantive
> purposes of our inquiry at this stage

*Lobato,* at 1293.

In another federal district court case, closely on point, the judge granted summary judgment in favor of the employer who had discharged a probationary employee. *May v. Cockman,* 2016 WL 10591979. The district court in New Mexico had before it a case where a probationary employee made a claim of discrimination and retaliation for assisting other minority co-workers. The plaintiff had been discharged during his probationary period. The court there allowed his "temporal proximity" argument for purposes of a *prima facie* case. However, the court also strongly provided that it was not sufficient to demonstrate pretext under *McDonnell-Douglas.* *Id.* at 7. The court stated that:

> In this case, the probativeness of the temporal proximity is particularly
> weak because Plaintiff was terminated just prior to expiration of his
> probationary period. Indeed, it is neither unlawful nor unusual for an
> employer to conduct evaluations and make ultimate employment
> decisions, without any prior discipline, near the end of an employee's
> probationary period.

(*Id.* at 7) citing *Lobato v. New Mexico Env't Dep't,* 733 F.3d 1283, 1290 (10th Cir. 2013) (probationary employee may be lawfully terminated without the benefit of any progressive discipline at any point during the probationary period).

Further, the court provided that "…[A]n employer has a legitimate interest in removing a poorly preforming worker prior to the vesting of administrative process granted to a full employee." (Citing to *Shaw v. United States,* 622 F.2d 520, 527 (Ct. Cl. 1980) for the proposition "…termination near the end of a probationary period does not imply bad faith on the part of a government employer.") In fact, the *Cockman* court found that the termination less than two (2) months before the end of the probationary period "dramatically" reduced any "suspiciousness" about its timing and was "insufficient to show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual. *Cockman* at 7.

In conclusion, Plaintiff was a probationary, at will employee subject to discharge for any legitimate reason. Plaintiff named the wrong party who he claimed discriminated against him, and never pursued an EEOC claim against OTRD.

WHEREFORE, as there is no issue as to any material fact, this Defendant is entitled to summary judgment.

Respectfully submitted,

/s/Richard N. Mann
**RICHARD N. MANN, OBA#11040**
**LEXIE P. NORWOOD, OBA#31414**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Unit
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:   405.521.3921
Facsimile:   405.521.4518
Email: richard.mann@oag.ok.gov
Email: lexie.norwood@oag.ok.gov
*Attorney for Defendant*

~ 18 ~

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June 2018, I electronically transmitted the above and foregoing document to the Clerk of the Court using the ECF System for filing and to the following ECF registrants:

David R. Keesling
Timothy S. Kittle
KEESLING LAW GROUP, PLLC
6660 S. Sheridan Rd., Ste. 250
Tulsa, OK 74133
Email: david@KLGattorneys.com
Email: tim@KLGattorneys.com
*Attorneys for Plaintiff*

/s/Richard N. Mann
Richard N. Mann